**Willie G. COLEMAN, Plaintiff,**

v.

**ST. VINCENT DE PAUL SOCIETY, Defendant.**

No. 91–C–1030.

United States District Court, E.D. Wisconsin.

Aug. 25, 1992.

Willie G. Coleman, pro se.

Fox, Carpenter, O'Neill & Shannon, by Bruce C. O'Neill, Milwaukee, Wis., for defendant.

DECISION AND ORDER

MYRON L. GORDON, Senior District Judge.

This order addresses the question of whether a litigant, proceeding in forma pauperis [IFP] in a civil rights action, is entitled to have the United States shoulder the expenses associated with subpoenaing witnesses for trial on behalf of an IFP litigant. The above question is one of first impression in this circuit. *See Merritt v. Faulkner,* 697 F.2d 761, 768 (7th Cir.1983), *cert. denied,* 464 U.S. 986, 104 S.Ct. 434, 78 L.Ed.2d 366 (1983); *McKeever v. Israel,* 689 F.2d 1315, 1322 (7th Cir.1982). Having considered the issue in detail, I conclude that the United States must bear such a burden only to the limited extent that an

IFP litigant can demonstrate the necessity of the testimony of each witness requested to be subpoenaed for trial. *See* Rules 401, 402, 403, 611, Federal Rules of Evidence.

## I. Facts

On September 23, 1991, pro se plaintiff Willie G. Coleman filed a complaint alleging that the defendant, his former employer, St. Vincent DePaul Society [St. Vincent], unlawfully terminated his employment. As relief, Mr. Coleman seeks, among other remedies, reinstatement, back pay, and "$250,000 for the medical assistance that was cut off because of this inconvenience, debts that have been accumulated, and my credibility that has been destroyed."

In his complaint, Mr. Coleman alleges that St. Vincent treated him differently than other employees. Mr. Coleman specifically alleges that St. Vincent had a double standard concerning the practice of employees "punching" the time cards of fellow employees—allowing this practice in some instances but not in others. Mr. Coleman's complaint implies that St. Vincent disciplined, and ultimately terminated him, for punching the time card of a fellow employee. Additionally, Mr. Coleman alleges that, although he was an Assistant Manager, St. Vincent denied him access to manager's meetings while allowing other employees who were not managers to participate in such meetings.

In his complaint, Mr. Coleman makes no reference to St. Vincent's treating him differently because of his race. However, the *exhibits* attached to Mr. Coleman's complaint indicate that Mr. Coleman is African–American and that he believes St. Vincent discriminated against, and terminated him (on April 23, 1990), because of his race.

On November 19, 1991, this court granted Mr. Coleman leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. I concluded that Mr. Coleman's complaint, liberally construed, *see Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), states an arguable claim for relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2. Since that time, the action has proceeded toward a court trial scheduled to commence September 1, 1992.

Pursuant to the court's scheduling order, St. Vincent served and filed a four-person witness list on June 17, 1992. Mr. Coleman also served and filed a witness list, however, his list actually consisted of two lists, one of nine names and the other of thirty-three names. Four of the individuals on the nine-person list actually appeared on the thirty-three-person list; thus Mr. Coleman's "net" witness list actually consisted of thirty-eight names. By letter, I subsequently requested that Mr. Coleman combine his "two lists" into one list of only those persons that Mr. Coleman actually would call to testify at trial. Mr. Coleman's revised list, served and filed on July 21, 1992, consisted of seventeen names, two of which appeared on St. Vincent's witness list.

At the August 4, 1992, pretrial conference, the question was raised whether the court would order the issuance of subpoenas, at government expense, to Mr. Coleman's expected trial witnesses. *See generally* Rule 45, Federal Rules of Civil Procedure. The court took the matter under advisement. However, before concluding the pretrial conference, the court requested that Mr. Coleman reduce his witness list still further to include only those witnesses essential to the presentation of his case. Furthermore, the court directed Mr. Coleman to serve and file a writing explaining the evidentiary contribution and materiality of each witness he proposed to call on his behalf.

Following the pretrial conference, Mr. Coleman served and filed his second amended witness list. This filing consisted of thirteen names along with brief explanations as to the expected testimony of each witness. Only one of the thirteen names on this list appeared on St. Vincent's four-person witness list of June 17, 1992. Finally, to facilitate the issuance of subpoenas, if any, ordered by the court, Mr. Coleman was asked to provide the court with the addresses of the thirteen individuals on his "final" witness list.

Mr. Coleman's "address" submission included thirteen names but only provided addresses for ten of the thirteen persons on his "final" witness list. One of the three unaccounted for names on Mr. Coleman's "address" submission was the name of a person on Mr. Coleman's "final" witness list but for whom Mr. Coleman could not locate a complete address. The remaining two names on Mr. Coleman's "address" submission were individuals who did not appear on Mr. Coleman's "final" thirteen-person witness list but had appeared on Mr. Coleman's original two-list, thirty-eight-person witness list.

It is with this background that the court must now consider whether to order the issuance of subpoenas on behalf of Mr. Coleman to compel some or all of the individuals on his "final" thirteen-person witness list to testify at trial. However, before proceeding to that question, the threshold issue of who will pay the expenses of any subpoenas ordered issued on Mr. Coleman's behalf must be addressed in light of the fact that Mr. Coleman is proceeding in forma pauperis in this litigation.

## II. Analysis

Rule 45(b)(1), Federal Rules of Civil Procedure, recently amended and effective December 1, 1991, provides that:

Service of a subpoena upon a person named therein shall be made by delivering a copy thereof to such person and, if the person's attendance is commanded, by *tendering to that person the fees for one day's attendance and the mileage allowed by law.*

Witness fees are $40 per day. 28 U.S.C. § 1821(b). Witnesses must also be paid for their actual travel expenses. 28 U.S.C. § 1821(c). The plain meaning of the language of Rule 45(b)(1) requires the "simultaneous tendering of witness fees and the reasonably estimated mileage allowed by law with the service of the subpoena." *See CF & I Steel Corp. v. Mitsui & Co. (U.S.A.), Inc.,* 713 F.2d 494, 496 (9th Cir. 1983). Failure to comply with Rule 45(b)(1) invalidates a subpoena. *Id.*

The United States Supreme Court has declared that "the expenditure of public funds [on behalf of an indigent litigant] is proper only when authorized by Congress...." *United States v. MacCollom,* 426 U.S. 317, 321, 96 S.Ct. 2086, 2089, 48 L.Ed.2d 666 (1975). There are two specific statutory provisions in which a court may order the United States government, through the United States Marshals Service, to pay witness fees on behalf of a pro se litigant. First, in proceedings commenced in forma pauperis for writs of habeas corpus. *See* 28 U.S.C. § 1825(b). Second, in proceedings in forma pauperis under 28 U.S.C. § 2255 involving federal prisoners challenging their custody "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States [by a court established by Act of Congress]...." *See* 28 U.S.C. §§ 1825(b) & 2255.

Neither of the above two exceptions authorize federal courts to order the United States through the United States Marshals Service, to pay witness fees and other expenses for subpoenas ordered issued on behalf of IFP litigants bringing *civil rights actions.* Consequently, courts have turned to 28 U.S.C. § 1915, which generally authorizes proceedings in forma pauperis, to examine whether that statute provides for the *waiver* of witness fees and other expenses when IFP litigants subpoena witnesses or, in the alternative, whether it authorizes courts to order the United States Marshals Service *to pay* witness fees for IFP litigants.

Several courts have explored the possibility of whether an IFP plaintiff is entitled to have witness fees *waived* pursuant to 28 U.S.C. § 1915 thereby exempting the IFP plaintiff from the witness fee requirement of Rule 45(b)(1), Federal Rules of Civil Procedure, when subpoenaing witnesses for trial. However, many courts, including the court of appeals for the seventh circuit, have flatly rejected this approach. *See Tedder v. Odel,* 890 F.2d 210, 211 (9th Cir.1989); *Boring v. Kozakiewicz,* 833 F.2d 468, 474 (3d Cir.1987), *cert. denied,* 485 U.S. 991, 108 S.Ct. 1298, 99 L.Ed.2d 508 (1988); *McNeil v. Lowney,* 831 F.2d 1368, 1373 (7th Cir.1987), *cert. denied,* 485 U.S. 965, 108 S.Ct. 1236, 99 L.Ed.2d 435 (1988); *Johnson v. Hubbard,* 698 F.2d 286, 289–90

(6th Cir.1983), *cert. denied,* 464 U.S. 917, 104 S.Ct. 282, 78 L.Ed.2d 260 (1983); *Marks v. Calendine,* 80 F.R.D. 24, 27 (N.D.W.Va. 1978). Since witness fees must be paid, the question then becomes who must pay such fees in an IFP action.

Many courts have concluded that IFP plaintiffs, proceeding pursuant to 28 U.S.C. § 1915, are not entitled to the payment of witness fees by the United States. *See United States Marshals Service v. Means,* 741 F.2d 1053, 1057 (8th Cir.1984), *rev'd on other grounds,* 858 F.2d 404 (8th Cir.1988) (en banc), *cert. denied,* 492 U.S. 910, 109 S.Ct. 3227, 106 L.Ed.2d 575 (1989); *Hubbard,* 698 F.2d at 288–89; *Badman v. Stark,* 139 F.R.D. 601, 606 (M.D.Pa.1991); *Newson v. Harrison,* 687 F.Supp. 360, 361–62 (W.D.Tenn.1988). However, the court of appeals for the seventh circuit has not yet addressed this precise issue. *See Faulkner,* 697 F.2d at 768; *Israel,* 689 F.2d at 1322.

No court has expressly adopted the view that a court may, as a general rule, order the United States Marshals Service, as an arm of the United States, to pay the Rule 45(b)(1) witness fees on behalf of an IFP litigant. *But Cf. Calendine,* 80 F.R.D. at 28 (suggesting that an IFP litigant is ultimately responsible for the payment of witness fees and other costs but that such expenses may be *advanced* by the government and repaid by the IFP litigant at the conclusion of trial). However, some judges, in dissenting opinions, have convincingly argued that 28 U.S.C. § 1915(c) requires the United States government to pay, out right, the witness fees on behalf of IFP litigants. *See Means,* 741 F.2d at 1062–63 (Lay, C.J., concurring and dissenting); *Hubbard,* 698 F.2d at 291–94 (Swygert, J., dissenting).

In *Hubbard,* the late Judge Swygert of the court of appeals for the seventh circuit, sitting by designation, dissented from the sixth circuit's holding that 28 U.S.C. § 1915 provided neither for the waiver of, or government payment of, witness fees for indigent litigants. Judge Swygert's dissenting

opinion in *Hubbard* is particularly instructive. As Judge Swygert noted, 28 U.S.C. § 1915(c) provides that:

> The officers of the court shall issue and serve all process, and perform all duties in ... [IFP] ... cases. Witnesses shall attend as in other cases, and the same remedies shall be available as are provided for by law in other cases.

Judge Swygert argued that:

> [S]ection 1915 implicitly authorizes the payment of witness fees and travel costs in cases permitted to be brought under that statute. Reason tells us that section 1915(c) can only mean that *witness fees and costs* may be waived and that whatever costs involved *shall be borne by the United States as part of the operational expenses of its courts* ... If this construction of the statute is incorrect, there is no logical meaning which can be given the language of section 1915(c).

*Hubbard,* 698 F.2d at 292 (Swygert, J., dissenting) (emphasis added).

I agree with Judge Swygert. To construe 28 U.S.C. § 1915 as allowing an IFP litigant to commence an action but never to complete it because of the IFP litigant's inability to pay witness fees and other expenses associated with subpoenaing necessary witnesses for trial would be wholly illogical. In my view, the language of 28 U.S.C. § 1915(c) indicates a Congressional intent to exempt an IFP litigant from paying witness fees and other expenses required to subpoena witnesses. As Chief Judge Lay noted in his concurrence and dissent in *Means,* "We should not 'impute to Congress a purpose to paralyze with one hand what it sought to promote with the other.'" *Means,* 741 F.2d at 1062 (Lay, C.J., concurring and dissenting) (quoting *Clark v. Uebersee Finanz–Korp,* 332 U.S. 480, 489, 68 S.Ct. 174, 178, 92 L.Ed. 88 (1947)).

As noted, however, the seventh circuit has concluded that 28 U.S.C. § 1915(c) does not provide for the *waiver* of witness fees where IFP litigants seek to subpoena witnesses for trial. *Lowney,* 831 F.2d at 1373. Consequently, the only logical interpretation of 28 U.S.C. § 1915(c) is that it requires subpoenas requested by IFP liti-

gants to be issued at government expense "as part of the operational expenses of the courts." *Hubbard,* 698 F.2d at 292 (Swygert, J., dissenting).

Even though the above conclusion rejects the results reached by some circuits, it is not inconsistent with seventh circuit case law. While the seventh circuit has declined to address the precise issue of whether the United States must pay witness fees for IFP litigants, it has observed that "28 U.S.C. § 1915(c) *may* provide a basis" for resolving the question of "whether and when the funds for witness fees must be *advanced* to a federal civil indigent litigant." *Faulkner,* 697 F.2d at 768 (emphasis added). Therefore, I will order that the United States through the United States Marshals Service, be required to pay witness fees and other costs associated with subpoenaing witnesses on behalf of Mr. Coleman.

One caveat to my conclusion above must be emphasized. An IFP litigant should only be entitled to subpoena witnesses for trial at government expense after a preliminary and complete showing of the materiality and necessity of each witness. *See Hubbard,* 698 F.2d at 294 (Swygert, J., dissenting); *Burgess v. Andrews,* 657 F.Supp 1153, 1157 (W.D.N.C.1987). Thus, under 28 U.S.C. § 1915(c) the court retains discretion to determine the number of witnesses that an IFP litigant is entitled to have subpoenaed at government expense.

In light of the above analysis, the court must now consider which, if any, of the thirteen persons named on Mr. Coleman's "final" witness list require subpoenas. The two additional names appearing on Mr. Coleman's "address" submission will not be treated by the court as part of Mr. Coleman's "final" witness list because they were not originally part of that list.

The thirteen persons named on Mr. Coleman's "final" witness list are: Mariam [sic] Brown, Joe Collins, Jan Coleman, Willie Coleman, Joe Felsckir [sic], Cleo Fox, James Harrassmew, Beth Hobbs, Clara McCain, Pearley Mixon, Judy Ostrowski, Jim Schmitz, and Barbara Walls. Mr. Coleman will obviously not be subpoenaed because he is the plaintiff in this case.

Jan Coleman is presumably related to Mr. Coleman (wife, sister, mother?). This is inferred from Mr. Coleman's explanation that she will "explain how the termination has damaged the relationship of me & my dependents and our togetherness of those I love very much." The court concludes that a subpoena is not necessary to ensure the attendance of Jan Coleman because she is probably related to the plaintiff and presumably will appear on her own volition.

Beth Hobbs will not be subpoenaed because Mr. Coleman failed to provide Ms. Hobbs' complete address thus making it impossible to serve a subpoena upon her. Joe Felsecker will not be subpoenaed for the same reason; Mr. Coleman failed to provide *any* address for him. Marion Brown will not be subpoenaed because she is named on the defendant's witness list and thus can be cross examined and called adversely by Mr. Coleman if necessary.

Jim Schmitz will not be subpoenaed because Mr. Coleman has failed to demonstrate that Mr. Schmitz has first hand knowledge of Mr. Coleman's allegations of discrimination against St. Vincent. Mr. Coleman states that Mr. Schmitz was a person he worked under as a "Truck Driver Helper." This employment experience was not with St. Vincent and thus is not relevant to the present dispute.

The court will order the clerk to issue, and the marshal to serve, subpoenas commanding the following persons to appear and testify at trial: Joe Collins, Cleo Fox, Clara McCain, Pearley Mixon, and Barbara Walls. These five individuals appear to have been employed, or are currently employed with St. Vincent. They all seem to have first hand knowledge of the discriminatory events referred to by Mr. Coleman. Furthermore, because of their possible continuing employment with St. Vincent, they may be reluctant to testify on behalf of Mr. Coleman who is suing their employer. Thus, these persons should be subpoenaed.

Finally, the court will order the clerk to issue, and the marshal to serve, subpoenas commanding James Harrassmew and Judy Ostrowski to appear and testify at trial. Both of these individuals are expected to provide testimony concerning the damages that Mr. Coleman allegedly suffered as a result of St. Vincent's alleged discrimination against him.

## ORDER

Therefore, IT IS ORDERED that the clerk of court be and hereby is directed to issue subpoenas commanding Cleo Fox, Joe Collins, James Harrassmew, Clara McCain, Pearley Mixon, Judy Ostrowski and Barbara Walls to appear in Courtroom 225 of the Federal Building, 517 East Wisconsin Avenue, Milwaukee, Wisconsin, on September 1, 1992, at 9:00 a.m. Upon issuance of the subpoenas, the clerk shall present them to the United States Marshals Service.

IT IS ALSO ORDERED, pursuant to 28 U.S.C. § 1915(c), that the United States Marshals Service be and hereby is directed, upon receipt of the aforementioned subpoenas, to serve the subpoenas on the respective witnesses.

IT IS FURTHER ORDERED, pursuant to 28 U.S.C. § 1915(c), that the United States Marshal Service be and hereby is directed to pay statutory witness fees and mileage to each of the aforesaid witnesses.